## UNITED STATES OF AMERICA *v.* TANBARA GISABURO.

### DATED: OCTOBER 25, 1902.

1. Jurisdiction of U. S. District Court of Hawaii established where alleged crime shown to have been committed on the high seas on vessel registered under United States laws and owned by an American corporation; and that the port of Honolulu was the first place to which vessel came after the commission of the alleged crime.
2. Presumption of innocence; reasonable doubt.
3. Common law definition of murder.
4. Malice; period of time during which may exist; difference between express and implied malice.
5. Manslaughter; defined by Section 5341, R. S. U. S.
6. Distinction between murder and manslaughter.
7. Race prejudice not to be entertained.
8. Duty of master of vessel to maintain order; duty of crew to obey orders.
9. Blow with fist no excuse in law for retaliatory use of knife.
10. A butcher knife a deadly weapon in contemplation of law.

CRIMINAL LAW.    INDICTMENT FOR MURDER ON HIGH SEAS UNDER SECTION 5339 R. S. U. S.

*Robert W. Breckons,* U. S. District Attorney, for government.

*Frank E. Thompson,* for defendant.

#### CHARGE TO THE JURY.

ESTEE, J.    Gentlemen of the jury:    The prisoner at the bar stands accused of the crime of murder.    The indictment is based upon Section 5339 of the Revised Statutes of the United States, and charges that the defendant on the 30th day of July, in the present year, in and on board of the American vessel, "Fred J. Wood," upon the high seas, did unlawfully, maliciously, wilfully and with malice aforethought, make an assault upon one Jorgen J. Jacobson, and by means of a knife, inflicted upon

the said Jorgen J. Jacobson certain mortal wounds, from which mortal wounds the said Jorgen J. Jacobson did then and there instantly die.

By the terms of the indictment, it is charged that the defendant committed the crime of murder on board a vessel belonging in whole or in part to a citizen or citizens of the United States. To sustain the allegation in this case, the government has introduced evidence showing that the "Fred J. Wood" is a vessel registered under the laws of the United States of America and that she belonged in part to the E. K. Wood Lumber Company, and that the E. K. Wood Lumber Company is a corporation organized and existing under and by virtue of the laws of the state of California; that the port of Honolulu, in the District and Territory of Hawaii, is the first place to which said vessel came after the commission of the alleged crime. If satisfied of these facts beyond a reasonable doubt, and there appears to be no contradiction of such facts, then you are instructed that the jurisdiction of this court to try said offense has been fully established and made out; and that no further inquiry by you into this question of jurisdiction is necessary.

The prisoner has pleaded not guilty to the charge; and he comes to the bar of this court under the protection of that maxim of the law which holds that every man is presumed to be innocent until his guilt is proven. In a word, the burden of proof in this case is on the United States to establish the guilt of the defendant.

Gentlemen of the jury, you are to be the sole judges of the facts in this case. The law you will take from the Court. And you are to weigh the facts as shown upon the trial within the lines of the law as laid down in this charge.

Before you shall arrive at a verdict in this case, it must be by the unanimous assent of all your members. And you must be convinced beyond a reasonable doubt of the guilt or innocence of the defendant. The law, as I have said to you, presumes a man to be innocent until he is proven guilty. This presumption stands by him throughout the trial, and it will be necessary for the government to establish every material fact

in the case tending to show the guilt of the defendant beyond a reasonable doubt.

By a reasonable doubt, gentlemen, is meant a doubt based on reason and which is reasonable in view of all the evidence. It is not a fanciful or conjectural doubt, but must import such a condition of mind, after an impartial consideration of all the evidence, that you can not say you feel a conviction to a moral certainty of the defendant's guilt as charged.

Under the Act of Congress upon which the indictment was returned, it is provided that the punishment for the crime of murder shall be death. By a later Act of Congress, found in the second supplement to the Revised Statutes, Page 538, it is, however, provided that it shall be within the discretion of the jury in case it should return a verdict of murder against the defendant, to qualify such verdict by adding thereto the words "without capital punishment."

There is nothing in the Act of Congress under which the prisoner at the bar is being tried, which defines the nature of the crime of murder or which designates any degrees of which it may consist, such as murder in the first degree or murder in the second degree. In the absence of any such statutory provision the Federal Courts are obliged to have recourse to the common law and to the decisions of the courts thereon, for the definition or construction of the term of murder. The Act under which the prisoner is being prosecuted, simply provides that any person who commits murder "upon the high seas or any arm of the sea, or in any river, haven, lake, basin or bay within the admiralty and maritime jurisdiction of the United States, and out of the jurisdiction of a state, shall suffer death."

Upon a resort, therefore, to the common law and the interpretation of the courts for enlightenment, we find that murder is defined to be the "unlawful killing by a person of sound memory and discretion, of any human being in the peace of the commonwealth, with malice aforethought, express or implied." ,

In considering the question whether the defendant in this case is guilty of the crime of murder, it will be necessary

for you to have some understanding, gentlemen, of the legal meaning of the terms "Malice aforethought, express or implied."

I therefore instruct you, gentlemen of the jury, that malice aforethought is the especial characteristic which distinguishes the crime of murder from other cases of killing a human being. It need not necessarily be a special animosity or revenge or spite against the person killed in particular, but it may be a general evil intention. And this evil intention may be in law, either express or implied. Express malice is where one with a deliberate intent and design kills another; this design being evidenced by external circumstances which show an inward intention, such as antecedent threats, menaces or grudges or a lying in wait to do a person bodily harm.

But in many cases where malice is not expressed, the law will imply it. If one man kills another suddenly, without special provocation, the law implies malice. And there is no particular period of time during which it is necessary for malice to exist prior to the killing. If, without provocation that endangers life, an intent to do another person great bodily harm or to kill him is carried out the instant the desire springs into the mind, and the death of that person is the result, the offense is as certainly murder as if the intent had been fostered for a long period of time in the mind, awaiting a fitting opportunity to be executed. It may exist but for the moment sufficient to consummate the design; no limit can be placed on its duration. Crime is the result of mental processes which it is impossible for one other than the person accused of the crime to explain.

The difference, then, between express and implied malice is this: the one is indicated by the circumstances showing premeditation, the other is an inference of law to be drawn from the act committed. Malice is inferred when one person kills another person without great provocation.

The District Attorney has informed you in his opening statement of the case, that you were at liberty to bring in one of four verdicts, to wit: a verdict of not guilty; a verdict of guilty

of murder; a verdict of guilty of murder without capital punishment, and a verdict of manslaughter.

I hope I have made clear to you what constitutes murder, and I think you understand that murder implies the presence of malice, expressed or implied.

I cannot better explain to you the term of manslaughter than to read to you Section 5341 of the Revised Statutes of the United States, which provides that—

"Every person who, within any of the places designated in Section 5339 of the Revised Statutes (being within any fort, or arsenal, dockyard, magazine or in any other place or district of country under the exclusive jurisdiction of the United States, or upon the high seas or any waters within the admiralty jurisdiction of the United States) unlawfully and wilfully, but without malice, strikes, stabs, wounds or shoots at or otherwise injures another, of which striking, stabbing, wounding, shooting or other injury, such other person dies, is guilty of manslaughter."

The distinction, therefore, between the crime of murder and that of manslaughter, as you will perceive, is the presence or absence of malice.

I may say to you, in the language of a celebrated judge, that:

"No words of reproach, how grievous soever, will excuse a man for killing another; nor will any trivial provocation, which in point of law amounts to an assault, not even a blow, of course reduce the crime of the party killing to manslaughter. For where the punishment inflicted for a slight provocation of any sort is outrageous in its nature, either in the manner or the continuance, beyond all proportion to the offense, it is rather to be considered as the effect of brutal malignity than of human frailty. It is one of the true symptoms of what the law denominates malice, and, therefore, the crime will amount to murder, notwithstanding such provocation. Barbarity will often make malice. This is the language of the most approved authority. For in cases of this sort, much also depends upon the weapons or manner of chastisement; for if it be one which immediately endangers life—(as such a knife as is described by the

witnesses in this case) and it is used with brutal violence upon a slight injury, to produce death, the party will be guilty of murder. But if, from all the circumstances, the act may fairly be attributed to an intention not to kill or dangerously to wound, but to chastise or repel the aggressor, and therefore has not proceeded from a cruel and implacable malice, founded on a spirit of revenge, it will amount to manslaughter."

Gentlemen of the jury, I instruct you that it is within my province to comment upon the testimony, leaving, of course, the ultimate decision thereon to the jury. But you are intelligent men. You have sat here for almost a week, and I am sure are sensible of the high responsibility which rests upon you in the public duty you are now performing as members of this jury. The facts seem to me to be contained within a very small compass, and I shall not, therefore, review any of the testimony. I wish, however, to say to you, gentlemen of the jury, that you have taken an oath to give to the defendant a fair and impartial trial, and so you are not to be prejudiced against the defendant by reason of the fact that he belongs to another race than that to which you belong. He has testified in his own behalf, being at liberty to refuse to do so if he so desired; and you are to weigh his testimony just as you would weigh the testimony of any other witness testifying under like circumstances, whatever his nationality.

You are further instructed that in passing upon the evidence in this case, you must endeavor to reconcile the testimony of the various witnesses with the belief that they have tried to tell the truth. There may be some contradiction in the statements of the witnesses as to the exact time or manner of the commission of the crime charged in this case; such as the opinion of one witness that the defendant had the knife described in the testimony in his right hand, and that of another witness that he had the knife in his left hand. If you believe from the evidence that the prisoner did have the knife that killed Captain Jacobson in one of his hands, you should remember that it is the settled experience of human nature that in moments of excitement men rarely see all of the details of a matter from

the same point of view, or agree upon the exact details of an occurrence.

Gentlemen of the jury, I wish in conclusion, however, to call your attention to the fact that the defendant, although the cabin boy of the ship "Fred J. Wood," was twenty-one years of age, and a man full grown. It was his duty to obey the orders of the captain to the same extent as it was the duty of the sailors to do so. It was the duty of the captain to maintain order among his crew and to see to it that his orders were obeyed. The safety of the ship depended on this.

There is some testimony tending to show that when the captain ordered the defendant aft, he undertook to make him go, the boy proving sullen, and struck the defendant. You are the sole judges of the truth of this testimony. But in any event the court instructs you, that if the captain did so strike the defendant, he, the defendant, did not derive therefrom any right to stab the captain with a butcher knife, or to stab him in any manner, and that the action of the captain in so striking the boy, if you believe that he did strike him, was no excuse whatever in law for the use of the knife by defendant.

It must be remembered that the ship was far out at sea and that the use of a deadly weapon on ship board by any one of the crew or any officer upon anybody on board the vessel was and is illegal, except only in defense of life.

A butcher knife in contemplation of law is a deadly weapon.

I may repeat, gentlemen, that you are the exclusive judges of the facts in this case.